IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KIMBERLEY CONLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-19-288-RAW-SPS |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Kimberley Conley requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty years old at the time of the administrative hearing (Tr. 51, 175). She completed high school and two years of college and has worked as an LPN and an RN (Tr. 23, 194). The claimant alleges inability to work since an amended alleged onset date of December 2, 2016, due to COPD, asthma, diabetes, obesity, sleep apnea, chronic low back pain, depression, hypertension, anxiety, and diabetic neuropathy (Tr. 193).

## Procedural History

On October 16, 2016, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The application was denied. ALJ Luke Liter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 28, 2018 (Tr. 10-25). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, sit for six hours in an eight-hour workday, and stand/walk a combined total of four hours out of an eight-hour day. Additionally, he found she could occasionally climb ramps/stairs, kneel, crouch, and crawl; and frequently balance and stoop; but she should avoid climbing ladders/ropes/scaffolds (Tr. 16). The

ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, small product assembler, inspector/packer, and conveyor line bakery worker (Tr. 23-25).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly evaluate the treating physician opinion of Dr. Charity Holder, DO, and (ii) failing to properly assess her subjective statements. The undersigned Magistrate Judge agrees with the claimant's first contention, and the decision of the Commissioner should be reversed.

The ALJ determined that the claimant had the severe impairments of obesity, obstructive sleep apnea, COPD, type II diabetes mellitus, and diabetic peripheral neuropathy, as well as the nonsevere impairments of depression and anxiety (Tr. 13). The relevant medical evidence demonstrates that the claimant was considered a morbidly obese woman whose weight generally ranged from 360-395 pounds, and she considered bariatric surgery but ultimately decided against it (Tr. 297, 301, 438). Notes reflect noncompliance with both dietary restrictions and medication management of her impairments (Tr. 399, 434).

The claimant underwent a cardiac stress test that was suggestive of ischemia but ultimately revealed mild plaque and no blockages (Tr. 734, 779). She also underwent a sleep study on June 15, 2017, which confirmed her obstructive sleep apnea with a need for a CPAP but noted there was no periodic limb movement disorder (Tr. 891-893).

On December 2, 2015, Dr. Charity Holder, DO, completed a "Pulmonary Medical Source Statement," in which she indicated she had seen the claimant approximately every

three months for two years (Tr. 286). She assessed the claimant with moderate COPD and obstructive sleep apnea, referring to pulmonary function testing and the claimant's use of a CPAP machine (Tr. 286). She indicated the claimant had asthma attacks approximately twice a year, which incapacitated her for seven days at a time (Tr. 296). She noted the claimant had a poor prognosis, and that the claimant could sit thirty minutes at a time and stand five minutes at a time, and that total she could only sit and stand/walk each less than two hours in an eight-hour workday (Tr. 287). She further stated that the claimant would need to take unscheduled breaks every thirty minutes, for fifteen to thirty minutes, during which time she would need to sit quietly (Tr. 287). Furthermore, she indicated, *inter alia*, the claimant could lift/carry less than ten pounds even rarely, that she would need to avoid exposure to all environmental limitations to some degree, and that she would be off task 25% or more of the work day (Tr. 288). She stated that the claimant was incapable of even low stress jobs due to major depression and severe medical comorbidities (Tr. 289). That same day, Dr. Holder completed a very similar "Diabetes Mellitus Source Statement" in which she additionally indicated that the claimant was insulin dependent, had the same sit/stand/walking and lift/carry limitations with the need for breaks, and also needed to elevate her legs above the heart with prolonged sitting (Tr. 291-294).

At an office visit with Dr. Holder in 2017, the claimant reported worsening back pain, including pain ambulating (Tr. 894). She reported difficulty walking further than twenty or thirty feet, noting that her husband had to drop her off at the door for the appointment (Tr. 894). At this appointment, Dr. Holder counseled the claimant on obesity and the risk factors, as well as the need for activity (Tr. 895).

The claimant also underwent treatment with Dr. Meagan Brady, M.D., at the Muscogee Nation Clinic (Tr. 968-974). At an April 5, 2018 appointment, Dr. Brady discussed each of the claimant's impairments, noting improvement in diabetes management, that her back pain and hypertension were stable, and that her sleep apnea was moderate and improving (Tr. 968-969). She noted the claimant was positive for pain, as well as difficulty sleeping and staying asleep, and depression, as well as positive for decreased mobility, joint pain, myalgia, spasms, and tenderness (Tr. 970). The claimant was also assessed by Dr. Frank Hackl, M.D., at Access Pain Solutions on May 15, 2018 (Tr. 976). He noted she had an abnormal gait, stance, and swing component with mild antalgic component, as well as bilateral limited range of motion as to the lumbar spine, although she otherwise had full range of motion and 5/5 strength (Tr. 976-977). This gait/lumbar spine assessment was reiterated on a July 10, 2018 visit as well (Tr. 993).

On January 30, 2017, Dr. Heather Kobel, Ph.D., conducted a consultative examination as to the claimant's mental impairments (Tr. 714). Dr. Kobel assessed the claimant with generalized anxiety disorder and unspecified depressive disorder (Tr. 716). She found the claimant was alert and oriented; could follow basic, three-step instructions; had adequate memory, concentration, and attention; and was pleasant and cooperative (Tr. 716). She estimated the claimant's intelligence as average, and stated that the claimant provided appropriate responses in relation to judgment, abstraction, and insight (Tr. 716).

At the initial stage, state reviewing physicians determined that, in light of her physical impairments, the claimant was capable of performing light work, with the additional limitations of only occasionally climbing ramps/stairs, kneeling, crouching, and

crawling; only frequently stooping; and never climbing ladders/ropes/scaffolds (Tr. 82-85). This opinion was affirmed upon reconsideration, with the additional limitation of avoiding even moderate exposure to fumes, odors, dusts, gases, and poor ventilation (Tr. 97-100).

In his written opinion at step four, the ALJ thoroughly summarized the claimant's hearing testimony, as well as the medical evidence in the record (Tr. 16-23). The ALJ specifically noted the claimant's reported use of a CPAP machine since 2005, as well as her report that she has to sleep in a recliner (Tr. 18, 63). However, the ALJ found this report from the claimant not supported by the record because Dr. Holder's Medical Source Statements did not mention her sleeping in a recliner (although she did note the claimant's severe obstructive sleep apnea) (Tr. 18). The ALJ addressed the claimant's chronic diastolic heart failure, noting that heart catheterization had revealed only minimal plaquing of the coronary arteries with no blockages; her obesity, in which he noted her weight fluctuation and that he had considered it in his RFC; her sleep apnea and COPD, finding treatment notes indicating improvement with compliance with CPAP therapy and medication compliance; diabetes and peripheral neuropathy, which he noted to be stable; and low back and leg pain, which he stated had minimal related findings (Tr. 21-22). He found that her more recent medication compliance weighed in her favor and found her partially credible in that he did not find the record supported her statement that she was "unable to do anything" (Tr. 22-23). He assigned great weight to the opinions of the state reviewing physicians with no analysis, and no weight as to the opinions from Dr. Holder, stating only that Dr. Holder's restrictive limitations were not consistent with the record as

he had previously summarized (Tr. 23).  He ultimately concluded that the claimant was not disabled.

The claimant asserts that the ALJ erred in evaluating Dr. Holder's opinion, which likewise affected the analysis of her own subjective statements as well.  The undersigned Magistrate Judge agrees that the ALJ failed to properly evaluate Dr. Holder's opinion.[2]  The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record."  *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight.  The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001).  If the ALJ decides to reject a treating physician's opinion

---

[2] Here, the claimant's application for Title II benefits was filed December 2, 2016.  The undersigned Magistrate Judge recognizes that for claims filed on or after March 27, 2017, medical opinions are evaluated under a different standard pursuant to 20 C.F.R. § 404.1520c, which is not applicable here.

entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ was required to evaluate for controlling weight Dr. Holder's opinions as to the claimant's functional limitations. *See Drapeau*, 255 F.3d at 1214 (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984). The ALJ failed to do so here with Dr. Holder's opinion, ignoring the consistent evidence related to the claimant's abnormal gait, stance, and lumbar pain, in combination with her obesity (which could undermine his finding that the claimant could stand or walk four hours in an eight-hour workday), instead choosing to adopt the opinions of physicians who had neither examined nor developed a treating relationship with the claimant. Moreover, the claimant correctly points out that the ALJ improperly used Dr. Holder's opinion to undermine her testimony at the administrative hearing where she testified that she has to sleep in a recliner due to her sleep apnea, but the ALJ found this unsupported by the record because Dr. Holder did not specifically mention in the Medical Source Statement *how* the claimant slept. Such unsupported inference lends further support to the conclusion that the ALJ engaged in picking and choosing in order to find the claimant not disabled. *See Hardman*

*v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984).

Because the ALJ failed to properly evaluate the evidence available in the record, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 23rd day of February, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**